IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN DWAYNE JAMISON, | § | |
| TDCJ-CID NO.1083022 | § | |
|     Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-3413 |
| | § | |
| DOUG DRETKE, Director of the Texas | § | |
| Department of Criminal Justice-Correctional | § | |
| Institutions Division, | § | |
|     Respondent. | § | |

## OPINION ON DISMISSAL

Petitioner John Dwayne Jamison, an inmate incarcerated in the Texas Department of Criminal Justice – Correctional Institutions Division ("TDCJ-CID"), filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his underlying conviction for murder. (Docket Entry No.1). Respondent filed a motion for summary judgment. (Docket Entry No.8). Petitioner did not file a response to the motion. After considering all pleadings, motions, and the entire record, the Court will grant respondent's motion for summary judgment and deny petitioner relief.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner was indicted for murder with a deadly weapon in cause number 871835. The charge was enhanced by two prior convictions. (Docket Entry No.9, Part 18, p.14, *Jamison v. State*, No.14-02-00443-CR, Clerk's Record, page 8). Petitioner entered a plea of not guilty to the charge. (Docket Entry No.1).

At trial in the 176th State District Court of Harris County, Texas, the jury heard the following evidence, as summarized by the Fourteenth Court of Appeals for the State of Texas:

On the morning of March 9, 2001, Keith Davis was fatally shot outside a Texaco service station. In its case-in-chief, the State presented testimony from an eyewitness to the shooting as well as several witnesses who provided circumstantial evidence against appellant.

George Cunningham testified that, on March 9, he stopped at the service station. While inside, he saw appellant and someone he knew as "Goldie," who he believed to be related to appellant. Cunningham stated that Goldie was having an argument with the cashier and appellant was standing by the door holding a gun in his hand. Cunningham left the store after making a purchase and, while using the payphone outside, he overheard Goldie, appellant, and the decedent, Davis, arguing about a drug sale. He then heard gunshots. Although he heard the shots come from the area of the Texaco station, he did not see who fired the shots. When he did look in the direction of the gunfire, he saw appellant and Goldie get into a car and speed away, and he saw Davis lying on the ground, bleeding from his head.

Juan Granados testified that he was working at the Texaco station that day. He said he knew Goldie to be a drug dealer who frequented the station, and he knew appellant as Goldie's cousin. He further stated that he had previously lent Goldie $50 and, when Goldie and appellant came into the store that morning, Granados and Goldie argued about the debt. Goldie challenged Granados to go outside and fight, but Granados noticed appellant had a gun in his waistband and decided not to go outside, fearing he would be shot by appellant. As Goldie and appellant walked out of the store, Granados heard Goldie say, "It's a lick," which he took to mean someone was coming to purchase drugs. After they walked out, Davis came into the store to use the restroom. As he was leaving, Davis said to Granados that "they" were going to "mess" or "play" with him when he left the store. Granados then observed Goldie follow Davis through the parking lot as the two argued, and he saw appellant pull out his gun and point it at Davis. Moments later, Granados heard three gunshots, but he did not see who fired.

Melvin Barnes testified that on the morning of March 9, he drove a friend and another man, who was looking to purchase drugs, to the Texaco service station. Before they left, Davis drove up and a woman in Davis's vehicle asked Barnes to give her something of hers that he had in his possession. Barnes told her that he would give it to her if she and Davis followed him. At the station, Barnes told Goldie that the man wanted to buy drugs. Goldie referred Barnes to another man, known as "Rock," who said he would have to go to his house to retrieve the drugs. At some point, Barnes began to leave with his two passengers, but Goldie and Rock opened the doors to Barnes's vehicle. An argument ensued, during which Barnes observed Davis step out of the store and walk toward his vehicle, which was parked next to Barnes's vehicle. As he passed the group, Davis said, with a smile, "Don't shoot him with the shotgun." Appellant then discharged his handgun twice into the air and said to Davis, "Do you think this a game? [sic]." According to Barnes, appellant pointed

2

the gun at Davis and shot him. Barnes fled the scene, but when he later heard on the local news that Davis had been killed, he went to the police.

The State also introduced evidence from several law enforcement personnel. Sergeant E.T. Yancheck stated, among other things, that he compiled photospreads out of which Granados and Cunningham positively identified appellant as the man they saw with a firearm at the station that morning. Yancheck further testified that he retrieved a spent shell casing from the bed of Barnes's pickup truck. Dr. M. Gonsoulin, an assistant Harris County medical examiner, testified that he performed an autopsy on Davis and determined that he died of a single gunshot wound to the head. Robert Baldwin, a criminalist with the Houston Police Department's crime lab, testified that a bullet found lodged in the back of Davis's neck and the casing retrieved from the bed of Barnes's truck likely were fired from the same type of handgun.

The appellant testified on his own behalf. He admitted being present at the station on the morning in question, but he claimed he did not have a gun at the time and that he did not shoot Davis. He stated instead that he heard Goldie arguing with Davis then he heard gunshots. He said he followed Goldie because he was frightened and that he later fled to Louisiana because he was afraid of Goldie. In addition to the conflicting testimony of other witnesses, appellant was impeached with proof of his prior convictions for aggravated assault with a deadly weapon, felony theft, and misdemeanor theft. Appellant also called his girlfriend, Catina Scott, as a witness. She stated that appellant called her from Florida and told her that he had been present at the station when another person shot Davis.

*Jamison*, No.14-02-00443-CR, slip opinion at *1-2.

The jury found petitioner guilty of the offense. Petitioner pled true to the enhancement paragraphs and the jury assessed punishment at fifty years confinement in TDCJ-CID. (Docket Entry No.9, Part 20, page 10, *Jamison*, No.14-02-00443-CR, Clerk's Record at 97).

On appeal, petitioner sought relief on the following grounds:

1. The evidence was legally insufficient to support appellant's conviction for murder because the State's case against appellant was not credible. The testimony of Melvin Barnes was not corroborated by any witness and Juan Granados testified that he saw appellant's companion, not appellant, point a firearm at complainant.
2. The evidence was factually insufficient to support petitioner's conviction because the State's case against appellant was not credible. The testimony of Melvin Barnes was not corroborated by any witness and Juan Granados

>testified that he saw appellant's companion, not appellant, point a firearm at complainant. Appellant's testimony was corroborated by his girlfriend's testimony that he had been present at the Texaco station when some other individual shot complainant. The police did not recover any physical evidence linking appellant to the alleged offense.

(Docket Entry No.9, Part 1, page 14, *Jamison v. State*, Petition for Discretionary Review No. 645-03.

The Fourteenth Court for the State of Texas affirmed the conviction and the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review. (Docket Entry No.1).

In the pending petition, filed August 27, 2004, petitioner contends the evidence was insufficient to support his murder conviction on the following grounds:

1. The testimony of state's witness Melvin Barnes was not corroborated by any other witness;

2. State witness Juan Granados testified that petitioner's "cousin" pointed the gun at complainant;

3. Petitioner testified that the shooting occurred when Edward Jamison and another individual were with complainant;

4. Petitioner's girlfriend Catina Scott testified that petitioner told her another person had shot complainant; and,

5. The police did not recover any physical evidence linking petitioner to the offense.

(Docket Entry No.1).

Respondent moves for summary judgment on the ground that findings of the state courts are not contrary to or involve an unreasonable application of clearly established federal law, as determined by the Supreme Court. (Docket Entry No.8).

## ANALYSIS

### Summary Judgment

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial.  *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992).  Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact."  *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).  The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant.  *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

### The Antiterrorism and Effective Death Penalty Act of 1996

Petitioner's federal habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). *Lindh v. Murphy*, 521 U.S. 320 (1997).  The AEDPA, codified as amended at 28 U.S.C. § 2254(d), "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).  Specifically, the AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

The petitioner retains the burden to prove that he is entitled to habeas corpus relief. *Williams v. Taylor*, 529 U.S. 362 (2000). In this case, petitioner presented claims in a petition for discretionary review. As a matter of law, a denial of relief by the Court of Criminal Appeals serves as a denial of relief on the merits of a claim. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000) (citing *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)). Therefore, only those claims properly raised by petitioner in his petition for discretionary review have been adjudicated on the merits by the state courts.

Where a petitioner's claim has been adjudicated on the merits, section 2254(d) hold that this Court shall not grant relief unless the state court's adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1),(2); *Williams*, 529 U.S. at 411-13; *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Courts are to review pure questions of law and mixed questions of law and fact under subsection (d)(1), and pure questions of fact under subsection (d)(2). *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).

"The standard is one of objective reasonableness." *Montoya*, 226 F.3d at 403-04 (quoting *Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring)). Under this standard, a federal court's review is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning." *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (citing *Cruz v. Miller*, 255 F.3d 77, 86 (2nd Cir. 2001) (noting that even where a state court makes a mistake in its analysis, "we are determining the reasonableness of the state court's 'decision,' . . . not grading their papers.").

A decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413.  A decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle. . . but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  To be unreasonable, the state decision must be more than merely incorrect.  *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).  A reversal is not required unless "the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'"  *Id.*  Factual findings made by the state court in deciding a petitioner's claims are presumed correct, unless the petitioner rebuts those findings with "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

While Rule 56 of the Federal Rules regarding summary judgment applies generally "with equal force in the context of habeas corpus cases,"  *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000), it applies only to the extent that it does not conflict with the habeas rules.  *Smith*, 311 F.3d at 668 (citing Rule 11 of the Rules Governing Section 2254 Cases in District Courts).  Therefore, section 2254 (e)(1), which mandates that findings of fact made by a state court are presumed correct, overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the non-moving party.  *Id.*  Unless the petitioner can "rebut[] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct.  *Id.*

7

Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519 (1972); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999). Thus, *pro se* pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them. *Haines*, 404 U.S. at 521. Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

## Sufficiency of Evidence to Support Conviction

A federal court tests the sufficiency of evidence in a federal habeas review of a state court conviction under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307 (1979). Evidence is sufficient to support a conviction if when viewed in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 319. The evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt so long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. *United States v. Stevenson*, 126 F.3d 662, 664 (5th Cir. 1997). Either direct or circumstantial evidence can contribute to the sufficiency of the evidence underlying the conviction. *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990). To determine whether the evidence is sufficient to support a state criminal conviction, the federal habeas court must look to state law for the substantive elements of the relevant criminal offense. *Jackson*, 443 U.S. at 324 n.16.

Petitioner was charged with murder with a deadly weapon, specifically, a firearm. (Docket Entry No.9, Part 18, page 14, *Jamison*, No.14-02-00443-CR, Clerk's Record Volume 1, page 8). In

Texas, a person commits murder if he "intentionally or knowingly causes the death of an individual. TEX. PEN. CODE ANN. § 19.02 (b) (Vernon 2003).

The Fourteenth Court of Appeals for the State of Texas found the evidence factually and legally sufficient to establish that petitioner murdered complainant. *Jamison,* No.14-02-00443-CR, slip opinion at *3. In arriving at this conclusion, the Fourteenth Court of Appeals found compelling that an eyewitness had testified that petitioner shot complainant. The Fourteenth Court of Appeals recognized that there were minor discrepancies in the testimony of various witnesses but "the most critical pieces of evidence went uncontradicted except by appellant's own self-interested testimony, which was impeached by both the testimony of other witnesses and by his own prior felony and theft convictions." *Id.*

With respect to petitioner's specific grounds, the Fourteenth Court of Appeals found the following evidence sufficient to support the conviction:

1. Melvin Barnes's testimony was corroborated by the testimonies of George Cunningham and Juan Granados to the extent that they, too, observed appellant with a weapon on the morning in question. *Id.* "Granados testified that he saw appellant point a weapon at Davis and, shortly thereafter, heard shots." *Id.*

2. With respect to appellant's contention that Granados testified that he saw appellant's companion with the gun, appellant misread the record, which clearly showed that witnesses, including Granados, intended the nickname "Goldie" to refer to appellant's companion and not to appellant. *Id.* at * 3 and n.2.

3. The jury may have discounted petitioner's testimony because it was contradicted by the testimony of other witnesses, impeached by his past convictions, and was self-interested in nature. *Id.* at *3.

4. The jury may have discounted the testimony of petitioner's girlfriend, Catina Scott, because it was in her own self-interest and a recitation of statements that appellant made to her. *Id.*

9

> 5. The physical evidence collected at the scene did not directly implicate appellant, but it did generally comport with witness testimony. *Id*.

The record supports the findings of the Fourteenth Court of Appeals. George Cunningham testified that he saw petitioner standing in the door jamb of the Texaco station on March 9, 2001 with a gun in his hand. (Docket Entry No.9, Part 7, page 9, *Jamison v. State*, Clerk's Record, Volume 3). He later saw petitioner and petitioner's cousin "Goldie" outside the store, arguing with complainant. (*Id.* at 15). He heard a gunshot, turned around and saw people leave the scene. (*Id.* at 16). He did not see the shooting but testified that petitioner was the only person with a gun in his hand outside the Texaco station. (*Id.* at 17). He identified petitioner from a photo spread. (*Id.* at 19).

Juan Granados testified that he knew "Goldie" because Goldie and Granados's supervisor were friends. (*Id.* at 36). Goldie would come to the station to sell dope. (*Id.*). On March 9, 2001, Goldie came to the station with his cousin. (*Id.* at 40). Granados and Goldie argued over money that Goldie owed Granados. (*Id.*, Part 8, page 2). Goldie invited Granados to go outside the store to resolve the dispute by fighting. (*Id.*). Goldie took off his jacket and handed it to his cousin. (*Id.*). Granados saw that the cousin had a gun tucked into the waist of his pants. (*Id.*). Granados declined the invitation to go outside. (*Id*. at 3). Goldie and his cousin went outside because they saw someone coming to purchase drugs. (*Id.* at 4). A silver Dodge truck pulled into the station and complainant got out of the truck and came into the store to use the restroom. (*Id.* at 11). Complainant returned to the truck and Goldie argued with him. (*Id.* at 13). Goldie's cousin got out of the car and approached complainant and Goldie with the gun in his hand. (*Id.* at 14-15). Granados was inside the store helping other customers. (*Id*.). He heard three shots and ran over to the window where the truck was parked. (*Id.* at 16). He saw complainant on the ground and Goldie and his cousin "burning tires." (*Id.*).

Melvin Barnes testified that he drove to the Texaco station to help a passenger in his truck to purchase drugs. (*Id.* at 38). Complainant and two other people followed him to the station in another truck. (*Id.* page 41). At the station, Barnes approached Goldie about purchasing drugs and Goldie referred him to another guy named "Rock." (*Id.*, Part 9 at 1-3). Rock told Barnes that he would take him to Rock's house to purchase the drugs. (*Id.* at 4). Barnes declined and returned to his truck with the money in hand. (*Id.* at 5). Barnes gave the money back to the passenger who wanted to purchase the drugs and Goldie and Rock opened the doors to the truck and tried to get the money from the man. (*Id.* at 6). The passenger told Barnes that he gave the money to Goldie because Goldie had a gun. (*Id.* at 7). About that time, Barnes saw complainant return to his truck. (*Id.*). As he approached the trucks, complainant said don't shoot him with the shotgun and smiled. (*Id.*). Barnes saw petitioner fire two shots and say something to complainant like "do you think this a game." Barnes saw petitioner shoot complainant. (*Id.* at 7-8).

Dr. Morna Gonsoulin, a Harris County medical examiner, testified that complainant died of a gunshot wound to the head. (*Id.*, Part 11, Volume 4, page 37). Sergeant E.T. Yanchek[1] testified that Granados and Cunningham identified petitioner as the gunman from photo-spreads. (*Id.* at 4-5).

Petitioner testified that he went to the Texaco station with Edward Jamison on March 9, 2001. (*Id.*, Part 12, Volume 4, page 9). They went inside the station where Edward argued with the store clerk. (*Id.* at 10). Petitioner thought the clerk and Edward were going to fight so he pulled Edward back. (*Id.* at 11). Neither he nor Edward had a gun. (*Id.*). He and Edward went outside and moved the car to the gas pump. (*Id.* at 13). Edward got outside the car to help someone and he stayed

---

[1] The spelling of Officer Yanchek's name differs in the opinion of the Fourteenth Court of Appeals from the spelling in the Reporter's Record. This Court adopts the spelling of Yanchek's name as it appears in the Reporter's Record.

inside. (*Id.*). Two trucks pulled up. Edward started arguing with complainant. (*Id.* at 14). Petitioner got out of the car to tell Edward to come on and as he got halfway to where Edward was standing, he heard gunshots. (*Id.* at 16). He saw Edward and another man flee the scene. (*Id.*). He turned and started running back to the car because he was scared. (*Id.* at 17). Edward drove him home. (*Id.*). Edward told petitioner that Edward had "messed up." (*Id.*). Petitioner learned what happened the next morning from watching television news. (*Id.*).

Catina Scott, petitioner's girlfriend testified that petitioner called her and told her that he was in Florida and needed her to pick him up at the bus station in Beaumont. (*Id.*, Part 10, Volume 4, page 28). She took him to her sister's apartment in Port Arthur. (*Id.* at 29). Scott told a detective where petitioner was staying and that petitioner had told her that he was in Houston with a guy who was involved in a shooting. (*Id.*, Part 12, Volume 4, page 3).

Although there are some minor variances in the testimonies of the State's witnesses, a jury, nevertheless, reasonably could conclude that petitioner knowingly or intentionally caused complainant's death with a firearm. As to the credibility of the testimonies of petitioner and other witnesses, a federal court may not substitute its own judgment regarding the credibility of witnesses for that of the state courts. *Marler v. Blackburn*, 777 F.2d 1007, 1012 (5th Cir. 1985). All credibility choices must be resolved in favor of the jury's verdict. *United States v. Nguyen*, 28 F.3d 477, 480 (5th Cir. 1994). Accordingly, the Court finds that the state court's rejection of petitioner's insufficient evidence claim was neither an unreasonable application of clearly established federal law nor an unreasonable determination of the facts from the evidence.

To the extent that petitioner challenges the factual sufficiency of the evidence, he is not entitled to federal habeas relief. Factual insufficiency is a creation of Texas law whereby the

reviewing court scrutinizes the fact finder's weighing of the evidence. *Woods v. Cockrell*, 307 F.3d 353, 357-58 (5th Cir. 2002); *Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). Because a factual sufficiency claim is based entirely on Texas law, it will not support a claim for relief under federal habeas law. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

Based on the foregoing, the Court will grant respondent's motion for summary judgment and deny petitioner federal habeas relief.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted). Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001). On the other hand, when denial of relief is based on procedural grounds, the petitioner must not only show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Beazley*, 242 F.3d at 263 (quoting *Slack*, 529 U.S. at 484); *see also Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000). A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For the reasons set forth in this Opinion on Dismissal, the Court has

determined that petitioner has not made a substantial showing of the denial of a constitutional right. Therefore a certificate of appealability from this decision will not issue.

## CONCLUSION

Finding no unreasonable application of clearly established federal law in the record of the state habeas proceeding, the Court ORDERS the following:

1. Respondent's motion for summary judgment (Docket Entry No.8) is GRANTED.

2. Petitioner's habeas petition is DISMISSED, with prejudice.

3. A certificate of appealability is DENIED.

The Clerk will provide a copy to the parties.

Signed at Houston, Texas, on this 26th day of July, 2005.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE